## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRY HARRIS**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  16-10938**

**DARRELL VANNOY**                                **SECTION "B"(2)**

## REPORT AND RECOMMENDATION

    This matter was referred to a United States Magistrate Judge to conduct hearings,

including an evidentiary hearing, if necessary, and to submit proposed findings and

recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the

entire record, I have determined that a federal evidentiary hearing is unnecessary.  See

28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition

for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    The petitioner, Terry Harris, is incarcerated in the Louisiana State Penitentiary in

Angola, Louisiana.[2]  On September 9, 2004, Harris was indicted by a Jefferson Parish

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

grand jury and charged with the aggravated rape of a juvenile male, M.B.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> The victim's aunt, M.J., testified that she began dating Mr. Harris in 2002. At that time, Mr. Harris was about 21 or 22 years of age. Mr. Harris began living with her and her family in 2003 at 1804 Dogwood Drive in Harvey. M.J. and her brother, A.J., testified that in addition to the aunt, the household consisted of M.J.'s parents, M.J.'s brother, the brother's two children and his stepson, the victim.
>
> [. . .]
>
> According to M.J., Mr. Harris no longer lived with her on May 10, 2004 when another incident occurred across the street from her. That incident resulted in Mr. Harris' arrest on May 10, 2004.
>
> M.J. and A.J. testified that it was not until after Mr. Harris was arrested after being accused of doing something to a young girl across the street that the victim in this case came forward with allegations about Mr. Harris. A.J. explained that when A.J. learned Mr. Harris was accused of sexually assaulting a ten-year-old girl across the street, he asked his children if Mr. Harris ever "molested" them. At that time, the victim revealed to his stepfather that Mr. Harris had sexually abused him. The victim told him that he did not come forward before then because Mr. Harris threatened to kill his stepfather.
>
> M.J. and A.J. reported the allegations to the police.
>
> [. . .]
>
> M.B., the victim, who was 14 years old at the time of trial, testified that one night in April of 2004 when he was eight years old, while he was sleeping with his siblings, Mr. Harris came in the room, pried the victim's mouth open (the victim was "gritting his teeth"), Mr. Harris placed his thumb inside of the victim's mouth, removed his thumb, and inserted his "private part" in the victim's mouth. The victim testified that Mr. Harris lived with him at the time of the incident and he treated Mr. Harris like an uncle.

_____

[3]St. Rec. Vol. 1 of 12, Indictment, 9/9/04; Grand Jury Return, 9/9/04. Some of the state court rulings reference the juvenile victim and witness and certain family members by their initials in accordance with La. Rev. Stat. § 46:1844(W) to protect their privacy. I will continue do so in this report.

On the next night, Mr. Harris, who was naked, brought the victim into his aunt's room in the back of the house.  After lying down on the bed, Mr. Harris told the victim to "suck his d***," and forced the victim to "suck his private part."  Mr. Harris made moaning noises as if it felt good.  Mr. Harris offered the victim money to buy a "PlayStation 2," and threatened to kill his dad if he told anyone about the incidents.

At trial, the victim did not remember talking to the police after the incident, but he did recall talking to a detective at some point, being examined by the doctor at the hospital, going to counseling, and conducting an interview with a lady in front of a video camera.  The victim told the lady that Mr. Harris made him "suck his nuts."  He admitted that he used the terms "nuts," penis, and "d***" to describe the penis because he thought they were all the same thing.  The victim identified Mr. Harris in open court.

State v. Harris, 83 So.3d 269, 272-74 (La. App. 5th Cir. 2011); State Record Volume 2 of 12, Louisiana Fifth Circuit Opinion, 11-KA-253, pages 5-8, December 28, 2011.

Harris was tried before a jury on December 14 through 17, 2009, and found guilty of the lesser offense of forcible rape.[4]  At a hearing on January 7, 2010, the state trial court denied Harris's motion in arrest of judgment and for a new trial.[5]  The state trial court thereafter sentenced Harris to serve 38 years in prison without benefit of parole, probation or suspension of sentence.[6]

---

[4]St. Rec. Vol. 1 of 12, Trial Minutes, 12/14//09; Trial Minutes, 12/15/09; Trial Minutes, 12/16/09; Trial Minutes, 12/17/09; Jury Verdict, 12/17/09; St. Rec. Vol. 5 of 12, Trial Transcript, 12/15/09; St. Rec. Vol. 6 of 12, Trial Transcript (continued), 12/15/09; Trial Transcript, 12/16/09; St. Rec. Vol. 7 of 12, Trial Transcript (continued), 12/16/09; Trial Transcript, 12/17/09; St. Rec. Vol. 8 of 12, Trial Transcript (continued), 12/17/09; St. Rec. Vol. 9 of 12, Trial Transcript (continued), 12/17/09.

[5]St. Rec. Vol. 1 of 12, Motion in Arrest of Judgment and Alternatively Motion for New Trial, 1/7/10; Sentencing Minutes, 1/7/10; St. Rec. Vol. 9 of 12, Sentencing Transcript, 1/7/10.

[6]St. Rec. Vol. 1 of 12, Sentencing Minutes, 1/7/10; St. Rec. Vol. 9 of 12, Sentencing Transcript, 1/7/10.

That same day, Harris also entered a not guilty plea to the multiple offender bill filed by the State.[7]  On March 19, 2010, the state trial court adjudicated Harris a second felony offender, vacated the former sentence and sentenced him as a multiple offender to 76 years in prison without benefit of probation or suspension of sentence.[8]

On direct appeal to the Louisiana Fifth Circuit, Harris's appointed counsel asserted two errors:[9] (1) The state trial court erred by denying the defense's motion to quash based on delayed prosecution beyond the period allowed by law. (2) The state trial court erred by not instructing the jury on the meaning of acquittal in connection with the other crimes evidence.  Harris filed a pro se supplemental brief asserting the following errors:[10] (1) He was denied due process when he was not allowed to confront and cross-examine witnesses during the Prieur hearing on the other crimes evidence. (2) He was convicted without proof of guilt beyond a reasonable doubt.

The Louisiana Fifth Circuit affirmed the conviction on December 28, 2011, finding all claims meritless.[11]  The court, however, remanded the matter for the trial court

---

[7]St. Rec. Vol. 1 of 12, Sentencing Minutes, 1/7/10; Multiple Bill, 1/7/10; St. Rec. Vol. 9 of 12, Sentencing Transcript, 1/7/10.

[8]St. Rec. Vol. 1 of 12, Nunc Pro Tunc Minute Entry, 3/3/11 (correcting Multiple Bill Hearing Minutes, 3/19/10); Trial Court Judgment, 3/19/10; St. Rec. Vol. 9 of 10, Multiple Bill Hearing Transcript, 3/19/10.

[9]St. Rec. Vol. 9 of 12, Appeal Brief, 2011-KA-0253, 4/20/11.

[10]St. Rec. Vol. 9 of 12, Pro Se Supplemental Brief, 2011-KA-0253, 7/27/11.

[11]Harris, 83 So.3d at 269; St. Rec. Vol. 2 of 12, 5th Cir. Opinion, 11-KA-253, 12/28/11.

to impose the mandatory parole restriction on the first two years of Harris's multiple offender sentence. The state trial court corrected Harris's sentence on January 20, 2012.[12]

The Louisiana Supreme Court denied Harris's related writ application on August 22, 2012, without stated reasons.[13] His conviction became final ninety (90) days later on November 20, 2012, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 11, 2013, Harris signed and submitted to the state trial court an application for post-conviction relief in which he asserted nine grounds for relief:[14] (1) He was denied the right to a fair trial when the state trial court allowed a correctional officer from the parish jail where he was housed to sit on the jury. (2) He was denied a fair trial when the state trial court allowed pictures into the jury room during deliberations and his counsel failed to object. (3) His counsel was ineffective by failing

---

[12]St. Rec. Vol. 2 of 12, Multiple Bill Sentencing Minutes, 1/20/12.

[13]State v. Harris, 97 So.3d 376 (La. 2012); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2012-KH-0401, 8/22/12; La. S. Ct. Writ Application, 12-KH-0401, 2/16/12 (dated 2/7/12).

[14]St. Rec. Vol. 7 of 7, Application for Post-Conviction Relief, 6/10/13 (dated 6/12/13).

to object to the pictures taken into the jury room. (4) He was denied a fair trial by the State's reliance on false testimony from L.C. (5) He was denied a fair trial when the state trial court denied defense counsel the opportunity to lay a foundation for impeachment evidence and denied the request to wait for a detective to return to testify about inconsistent statements. (6) He was denied a fair trial when counsel failed to object to the modified <u>Allen</u> charge. (7) His counsel was ineffective based on a conflict between counsel and petitioner.  After receiving additional briefing, the trial court denied relief as procedurally improper because Harris failed to provide factual argument in support of the claims.[15]

The Louisiana Fifth Circuit ordered the matter returned to the state trial court for further consideration.[16]  After additional briefing,[17] the state trial court found Claims No. 1 through 6 (except the incorporated claims of ineffective assistance of counsel) to be procedurally barred from review under La. Code Crim. P. art. 930.4(B) and/or (C).  The court also held that Harris's Claims No. 3, 6 and 7 failed to establish ineffective

---

[15]St. Rec. Vol. 2 of 12, Trial Court Order, 7/22/13; State's Response, 5/26/13; Opposition to State's Response, 6/18/13.

[16]The State failed to provide a copy of the Louisiana Fifth Circuit's unpublished order.  <u>See</u> St. Rec. Vol. 2 of 12, Trial Court Order, 10/29/13 (acknowledging the remand); St. Rec. Vol. 12 of 12, 5th Cir. Writ Application, 13-KH-727, 8/30/13 (dated 8/21/13).

[17]St. Rec. Vol. 2 of 12, Trial Court Order, 10/29/13; Supplemental Claims, 11/22/13 (dated 11/12/13); Trial Court Order, 1/10/14; State's Response, 1/31/14; Motion to Enforce, 2/6/14; Rebuttal to State's Response, 2/21/14; Trial Court Order, 4/14/14.  Harris to no avail also sought mandamus relief related due to the state trial court's delay.  St. Rec. Vol. 2 of 2, 5th Cir. Order, 14-KH-100, 3/12/14; St. Rec. Vol. 12 of 13, 5th Cir. Writ Application, 14-KH-100, 2/10/14.

assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and related state case law.

On May 21, 2015, the Louisiana First Circuit denied Harris's related writ application, citing the same reasons given by the state trial court.[18] The Louisiana Supreme Court denied Harris's related writ application as meritless under <u>Strickland</u>, 466 U.S. at 668, and as otherwise procedurally barred under La. Code Crim. P. arts. 930.2 and 930.4, with incorporated reference to the reasons given by the state trial court.[19]

II.    FEDERAL HABEAS PETITION

On June 17, 2016, the clerk of this court filed Harris's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[20] (1) The state trial court erred by denying the motion to quash based on the delayed commencement of trial because the trial limitations had previously expired. (2) The state trial court erred by allowing the State to introduce testimony from L.C. on a crime for which he was acquitted without instructing the jury on the meaning of acquittal. (3) The state trial court erred by denying petitioner's application for post-conviction relief using a higher burden

---

[18]St. Rec. Vol. 12 of 12, 5th Cir. Order, 15-KH-241, 5/21/15; 5th Cir. Writ Application, 15-KH-241, 4/20/15 (dated 4/9/15).

[19]<u>State ex rel. Harris v. State</u>, 193 So.3d 133 (La. 2016); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2015-KH-1225, 5/27/16; La. S. Ct. Writ Application, 15-KH-1225, 6/22/15 (dated 6/18/15); St. Rec. Vol. 2 of 12, La. S. Ct. Letter, 2015-KH-1225, 6/22/15.

[20]Rec. Doc. No. 1, pp. 5, 7, 8, 10, 13 and 23-24.  The two claims I have designated as nos. 11 and 12 were asserted in the form portion of Harris's petition.  The remaining claims are a combination of the other claims asserted in the form with the corresponding claims asserted in the supporting memorandum.

of proof than required by state law. (4) He was denied the right to a fair trial when the state trial court allowed a correctional officer from the parish jail where he was housed to sit on the jury. (5) He was denied a fair trial when the state trial court allowed pictures to go into the jury room during deliberations that were not related to the crime being tried and his trial counsel did not object. (6) He was denied effective assistance when (a) his trial counsel failed to object to the pictures taken into the jury room and (b) his appellate counsel did not assert the issue on appeal. (7)(a) The State showed L.C. evidence before trial so she could change her testimony and (b) relied on her false testimony. (8) He was denied a fair trial when the state trial court denied him the right to present a defense. (9)(a) He was denied effective assistance of counsel when counsel failed to object to the modified <u>Allen</u> charge, and (b) the state trial court erroneously told the jury during deliberations that the verdict had to be by 10 to 2 vote. (10) His counsel was ineffective based on a conflict between counsel and petitioner. (11) The evidence was insufficient because the victim stated at trial that the incident occurred April 1, 2004, while petitioner was in jail. (12) He was denied effective assistance because (a) trial counsel failed to call witnesses to prove petitioner was in jail when the victim said the crime was committed, and (b) appellate counsel failed to assert actual innocence and false testimony claims.

The State filed a response in opposition to Harris's petition addressing the first 10 claims asserted in Harris's petition and memorandum. The State asserts that Harris's Claims No. 1, 3 and 10 fail to state a cognizable basis for federal habeas relief, Claims

No. 4, 5,[21] 7, 8 and part of 9[22] are in procedural default and Claims No. 2, 6 and part of 9 are meritless.[23]  Harris filed a reply to the State's response urging the court to consider the merits of the 10 claims addressed by the State.[24]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Harris's petition, which, for reasons discussed below, is deemed filed in a federal court on June 17, 2016.[26]  The threshold questions in habeas review under the

_____

[21]The State asserts the procedural bar to the alleged error by the state trial court and not as to the ineffective assistance portion which is repeated and thoroughly addressed in Claim No. 6.

[22]The State asserts the procedural bar to the alleged error by the state trial court and not the potion of the claim addressing ineffective assistance which is address on the merits.

[23]Rec. Doc. No. 14.

[24]Rec. Doc. No. 15.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378

amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State does not address timeliness, but I find that Harris's petition was timely filed under the AEDPA.  The State concedes that Harris exhausted state court review of the 10 claims it addressed, and argues that several of those claims are in procedural default.  However, Harris's Claim No. 12, alleging ineffective assistance of trial and appellate counsel, was not asserted in any state court before being presented here and state court review has not been exhausted.  The claim, nevertheless, is without merit and no further exhaustion is required for this court to address it. 28 U.S.C. § 2254(b)(2).

The State also asserts that Harris's Claim No. 7(b), that the State relied on false testimony, is procedurally barred from federal habeas review because the state courts declined to consider this claim on post-conviction review finding that it had been fully addressed on direct appeal, citing La. Code Crim. P. art. 930.4(A).  The bar under La. Code Crim. P. art. 930.4(A) is not a true procedural bar that would prevent this court from reviewing the claim.  The bar instead precludes Louisiana courts from review of a

---

(5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Harris delivered the petition to prison officials on June 17, 2016, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. No. 1, p. 40.

post-conviction claim already "fully litigated" on direct appeal.  Bennett v. Whitley, 41

F.3d 1581 (5th Cir. 1994).  The presumption is that the claims were not new or different

from something previously litigated and resolved on appeal by the higher state courts.

Id. at 1583.  As a result, "the bar imposed by article 930.4(A) is not a procedural bar in

the traditional sense, nor is it a decision on the merits."  Id.  A federal habeas court

simply "look[s]-through" the ruling on collateral review and considers the findings and

reasons in the direct appeal where the claims were first litigated.  Id. at 1582-83.  For this

reason, this federal habeas court is not barred from reviewing Harris's Claim No. 7(b)

alleging false testimony relied upon by the State.

The State's other procedural default arguments concerning the remaining claims

are addressed as follows.

## IV.    PROCEDURAL DEFAULT (CLAIMS NOS. 4, 5, 7(a), 8 AND 9(b))

The State contends that five of Harris's arguments are in procedural default;

specifically, Claim No. 4, he was denied the right to a fair trial when the sate trial court

allowed a correctional officer from the parish jail to sit on the jury; Claim No. 5, he was

denied a fair trial when the state trial court allowed pictures to go into the jury room

during deliberations that were not related to the crime being tried and his counsel did not

object; Claim No. 7(a), the State showed L.C. evidence before trial and had her change

her testimony; Claim No. 8, he was denied a fair trial when the state trial court denied

him the right to present a defense; and Claim No. 9(b), the state trial court erroneously

told the jury during deliberations that the verdict had to be by 10 to 2 vote. The state trial court barred review of each of these claims pursuant to La. Code Crim. P. art. 930.4(B) and (C) for failure to assert the claims in a timely manner at trial or on appeal. The same reasons were given by the Louisiana Fifth Circuit and adopted by the Louisiana Supreme Court.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. The procedural bar also prevails over any alternative discussion of the merits of the claim by a state court. See Robinson v. Louisiana, No. 13-30016, 2015 WL 1323334, at *4 (5th Cir. Mar. 25,

2015) (citing <u>Woodfox v. Cain</u>, 609 F.3d 774, 796 (5th Cir. 2010)).  In this case, the procedural rules cited by the state courts bar review of Harris's federal habeas claims.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.   A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Walker v. Martin</u>, 562 U.S. 307, 316-17 (2011); <u>Glover</u>, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) <u>Beard v. Kindler</u>, 558 U.S. 53, 60-61 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  <u>Beard</u>, 558 U.S. at 60 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

The last reasoned decision on these issues was the judgment of the Louisiana Supreme Court, which disposed of the repetitive claims citing La. Code Crim. P. art.

930.4 and adopting the reasons of the state trial court, which specifically cited La. Code Crim. P. art. 930.4(B) and (C) to bar review of these claims.  Under the circumstances of this case, the provisions of Article 930.4(B) and (C) are independent and adequate to bar federal review of these claims.  <u>Bennett</u>, 41 F.3d at 1581 (Article 930.4 is an independent and adequate state procedural rule); <u>Johnson v. Cain</u>, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012)  (Lemelle, J.) (Article 930.4(C)); <u>Perez v. Cain</u>, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (Article 930.4(C)); <u>Thomas v. Cain</u>, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (Article 930.4(B)); <u>Simmons v. Cain</u>, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (Article 930.4(B) and (C)); <u>Washington v. Cain</u>, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (Article 930.4(B)); <u>see also</u>, <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.

The state courts' rulings were based on Louisiana law setting forth the procedural requirements for the presentation of post-conviction claims.  <u>See</u> <u>Fisher</u>, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state courts' reasons for dismissal of Harris's claims were therefore independent of federal law and adequate to bar review of his claims in this court.

14

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Fisher</u>, 169 F.3d at 301 (citing <u>Coleman</u>, 501 U.S. at 748-50); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

Construed broadly, Harris's reply to the State's opposition argues that the claims were not raised sooner because his appellate counsel did not contact him and he did not have the knowledge or transcripts to assist in his appeal.[27]  Harris's contention is contradicted by his pro se supplemental appeal brief in which he asserted two claims not brought by appellate counsel and which included transcript and record citations.[28] Harris

---

[27]Rec. Doc. No. 15.

[28]St. Rec. Vol. 9 of 12, Pro Se Supplemental Brief, 2011-KA-0253, 7/27/11.

therefore has not offered any cause for the default that would excuse the procedural bar imposed by the Louisiana courts. The record does not support a finding that any factor external to the defense prevented petitioner from raising these claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him or his counsel from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.      FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to

the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Harris presents no argument and the record contains nothing establishing his actual innocence on the underlying conviction.  Harris contends that the victim recalled that the rapes occurred on dates during which Harris was incarcerated.  As discussed below, although Harris claims that this proves his actual innocence, the jury and the reviewing state courts found that the rapes occurred on dates when Harris was present in the minor victim's home, and any inconsistency was resolved by other facts and evidence.

For these reasons, Harris has failed to overcome the procedural bar to his claims, and his Claims No. 4, 5, 7(a), 8 and 9(b) must be dismissed with prejudice as procedurally barred.

V.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

17

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    ANALYSIS

A.    DENIAL OF MOTION TO QUASH (CLAIM NO. 1)

Harris argues that the state trial court erred by denying the defense motion to quash the indictment based on delayed commencement of trial because the statute of limitations expired before his trial began in 2009.  Harris's counsel filed a motion to quash the indictment on September 14, 2009, claiming that the state had exceeded the time allowed by state law to bring the matter to trial.  At an October 2, 2009, hearing, the state trial court denied the motion, finding that under Louisiana law the delay was attributable to four other pending criminal cases against Harris, he did not move for a speedy trial and he suffered no prejudice.[29]  The Louisiana Fifth Circuit reviewed the same issue on direct appeal and determined that several motions, including motions to continue, were filed by Harris and caused or remained pending during the delay period. The court noted that the trial was scheduled within an appropriate time after the motions were resolved or withdrawn.  This was the last reasoned state court opinion on the issue.

---

[29]St. Rec. Vol. 1 of 12, Minute Entry, 10/2/09.

See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

To the extent Harris requests that this court review the propriety of denial of the motion to quash under state law, "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 536 U.S. 216, 219 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotations omitted). This court does not sit as a "super" state supreme court. See Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) (citing Martin v. Wainwright, 428 F.2d 356, 357 (5th Cir.), cert. denied, 400 U.S. 918 (1970)). This court will only review Harris's claim if he can establish that the state courts' denial of his motion to quash constituted a violation of a constitutional right. Construing his arguments broadly, Harris asserts violation of his right to a speedy trial in this regard.

The Sixth Amendment guarantees every person accused of crime the right to a speedy trial. Amos v. Thornton, 646 F.3d 199, 204 (5th Cir. 2011). Whether a defendant has been deprived of his right to a speedy trial is a mixed question of law and fact. Id. at 204; Divers v. Cain, 698 F.3d 211, 216 (5th Cir. 2012). Therefore, to obtain federal habeas relief, petitioner must show that the state court's decision denying his claim was contrary to or an unreasonable application of Supreme Court precedent. The court must

consider that, "due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, our 'always-substantial deference is at an apex.'" Divers, 698 F.3d at 217 (quoting Amos, 646 F.3d at 204-05).

In Barker v. Wingo, 407 U.S. 514, 530 (1972), the Supreme Court recognized that "[i]t is . . . impossible to determine with precision when" a specific trial delay crosses the line and becomes unconstitutionally long. Barker, 407 U.S. at 521; Laws v. Stephens, 536 F. App'x 409, 412 (5th Cir. 2013). The Supreme Court declared that "'[t]he right of a speedy trial is necessarily relative,'" and required the courts to apply "a functional analysis of the right in the particular context of the case [.]" Id. at 522 (citation omitted). Courts must consider and balance the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. Barker, 407 U.S. at 530; Amos, 646 F.3d at 205 (citing Goodman v. Quarterman, 547 F.3d 249, 257 (5th Cir. 2008)); Doggett v. United States, 505 U.S. 647, 651 (1992).

In addressing Harris's claim, the state trial court and the Louisiana Fifth Circuit relied on state speedy trial laws that were consistent with the Barker factors. Those findings are supported by the record.

Under La. Code Crim. P. art. 578(A)(2), the State had two years from commencement of the prosecution to try Harris. Calculating time under the first Barker factor begins with "either a formal indictment or information or else the actual restraints

imposed by arrest and holding to answer a criminal charge that engage the particular

protections of the speedy trial provision of the Sixth Amendment." <u>Dillingham v. United

States</u>, 423 U.S. 64, 65 (1975) (per curiam).  The record reflects that Harris was indicted

by a grand jury on September 9, 2004, and the State ordinarily would have had two years

from that date to try Harris.  He was not tried until more than five years later on

December 14-17, 2009.

This delay under some circumstances could be problematic under <u>Barker</u>.  <u>See</u>

<u>Goodrum v. Quarterman</u>, 547 F.3d 249, 260 (5th Cir. 2008) (presumption of prejudice

from delay alone "applies only where the delay is at least [five] years")).  The Fifth

Circuit has recognized that a court should proceed to the second <u>Barker</u> factor when a

case like this one involves a delay of more than twelve (12) months.  "Because this 'first

factor serves a dual function' as both a substantive <u>Barker</u> factor and 'a threshold

requirement,' we need not analyze the remaining factors unless the case involves a delay

of over twelve months.  <u>See</u> <u>United States v. Schreane</u>, 331 F.3d 548, 553 (6th Cir.

2003)." <u>Laws</u>, 536 F. App'x at 412.  Because Harris's delay exceeded this 12 month

threshold when calculated without considering any excusable periods of speedy trial

calculation, the reasons for delay should be considered.  <u>Laws</u>, 536 F. App'x at 412 n.3.

As the state trial court noted, Hurricane Katrina struck this area eleven months

after Harris was indicted.  Louisiana courts have repeatedly held that Hurricane Katrina

was a "cause beyond the control of the state" within the meaning of La. Code Crim. P.

arts. 578 and 579. In such cases, the limitations period was deemed to have started anew on June 5, 2006, the date designated by state statutory law to revive actions by the State. State v. Patin, 95 So. 3d 542, 552–53 (La. App. 4th Cir. 2012); State v. Williams, 5 So. 3d 904 (La. App. 4th Cir. 2009); State v. Francis, 977 So.2d 187, 192 (La. App. 4th Cir .2008). Therefore, under Louisiana law, the state had two years from that date, i.e. until June 5, 2008, to commence Harris's trial. Williams, 5 So.3d at 905; see Amos, 646 F.3d at 207 ("Delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state."). This accounted for a significant portion of the delay addressed by Harris.

In addition, the state courts found that Harris had a motion for preliminary hearing that remained pending from January 6, 2005, until September 2, 2009, when counsel orally withdrew the motion as unnecessary. The court also recognized the joint motions to continue which occurred on December 3, 2007, January 11, 2008, and May 12 and 15, 2008. These continuances repeatedly extended the time for trial and were followed by two other continuances attributed to the defense on June 6, 2008 and March 2, 2009.

As calculated by the state courts, each extension, including Hurricane Katrina, ultimately broadened the speedy trial period to March 2, 2010 under state law, leaving the actual trial commencement date of December 15, 2009, within the legal speedy trial time. Harris offers nothing to refute the accuracy of the state courts' calculations and I

find no contradictions in the record.  Similar to the state courts, I find that the second Barker factor weighs in favor of the State.

Harris has also failed to establish that the third and fourth factors favored the defense.  As the state trial court noted, at no time did Harris move for a speedy trial, as contemplated by the third Barker factor.  "[F]ailure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532.  As the Fifth Circuit has held, "an assertion that charges be dismissed for a speedy trial violation is not a value protected under Barker." Cowart v. Hargett, 16 F.3d 642, 647 (5th Cir. 1994) (citing Hill v. Wainwright, 617 F.2d 375, 379 (5th Cir. 1980)); United States v. Frye, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly."); but see, Divers, 698 F.3d at 219 (considering a motion to quash an assertion of the speedy trial right).

Even if Harris's motion to quash was considered an assertion of his speedy trial right, it did not automatically tilt this factor in his favor.  "[A] defendant who waits too long to assert his right will have his silence weighed against him." United States v. Molina-Solorio, 577 F.3d 300, 306 (5th Cir. 2009).  In this case, Harris raised his speedy trial claim only a few months before trial was set to start after it had been delayed and continued for five years.  He waited almost the entire term of the complained of delay to assert a speedy trial issue.  Thus, this factor weighs against Harris's claim. United States v. Parker, 505 F.3d 323, 330 (5th Cir. 2007).

As to the fourth <u>Barker</u> factor, the state courts found that Harris had not established that his defense was prejudiced by the delay.  After examining the first three <u>Barker</u> factors, the court must decide "whether the defendant bears the burden to put forth specific evidence of prejudice (or whether it is presumed)."  <u>United States v. Cardona</u>, 302 F.3d 494, 498 (5th Cir. 2002) (quotation marks and citation omitted). Harris has not demonstrated that any of the first three factors favor his position or that the state courts erred in resolving them against him. The burden of proving prejudice therefore rests with him.  <u>See</u> <u>Amos</u>, 646 F.3d at 208 n.42 (no presumption of prejudice even when two of the first three <u>Barker</u> factors weighed in the defendant's favor).

The fourth <u>Barker</u> factor recognizes three prejudice concerns: "(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself."  <u>Smith v. Hooey</u>, 393 U.S. 374, 377-378 (1969) (citation omitted).  The impact a delay may have on a defendant's ability to prepare his case presents the most serious form of prejudice.  <u>Frye</u>, 489 F.3d at 212 (citing <u>Barker</u>).  Anxiety over reputation, employment and private relationships during pretrial delay does not alone suffice to warrant reversal of a conviction. <u>Cowart</u>, 16 F.3d at 647.

Harris does not allege that his defense was prejudiced by any delay in bringing him to trial.  His incarceration was required in light of his other pending charges and

convictions obtained during the delay period and was not unduly extended by the delay of this trial.

Evaluation of the Barker factors does not support a finding that Harris's speedy trial rights were violated in any way.  He has not shown that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Supreme Court law. He is not entitled to federal habeas relief on this claim.

B.    OTHER CRIMES EVIDENCE (CLAIM NO. 2)

Harris alleges that the state trial court erred by allowing the State to introduce evidence from L.C. related to a rape for which Harris was acquitted without instructing the jury on the meaning of acquittal.  L.C.'s testimony was the subject of a pretrial hearing on September 2, 2009, following the State's notice of its intent to present her testimony at Harris's trial pursuant to La. Code Evid. art. 412.2 or alternatively La. Code Evid. art. 404(B).[30]  The state trial court held that the evidence was admissible under La. Code Evid. art. 412.2 as evidence of relevant and probative occurrences of the crime and Harris's lustful disposition towards children.[31]  Louisiana Code of Evidence article 412.2(A) provides in relevant part that certain evidence of other sexual activity may be admissible:

---

[30]St. Rec. Vol. 1 of 12, Notice of Intent, 6/22/09; Minute Entry, 9/2/09; St. Rec. Vol. 5 of 12, Hearing Transcript, 9/2/09.

[31]St. Rec. Vol. 1 of 12, Trial Court Judgment, 9/10/09.

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

La. Code Evid. art. 403 applies a balancing test to determine whether evidence should be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

In Harris's case, the state trial court addressed these considerations and held that the probative value of the evidence outweighed any prejudice and the factual distinctions between the crimes were insubstantial.

Harris's appointed counsel asserted this issue on direct appeal. The Louisiana Fifth Circuit denied relief for reasons similar to the trial court's reasons for admitting L.C.'s testimony as relevant and probative under La. Code Evid. art. 412.2. The court also noted that the testimony gave a chronology of events leading to M.B.'s disclosure of his rape and the trial court's limiting instruction made clear that it was not determinative of guilt in this case. This was the last reasoned state court opinion on the issue.

To the extent Harris argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. See Swarthout, 536 U.S. at 219.  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee.  Burgett v. Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)  In keeping with this principle, the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial."  Gonzales, 643 F.3d at 430 (quotation omitted).

This issue presents a mixed question of law and fact.  <u>Wilkerson v. Cain</u>, 233 F.3d 886, 890 (5th Cir. 2000).  Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

As an initial matter, Harris has failed to establish any error by the state trial court which would trigger review under due process standards.  <u>Robinson v. Whitley</u>, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); <u>Neal v. Cain</u>, 141 F.3d 207, 214 (5th Cir. 1998).  The state trial court's reasoning and admission of the evidence was affirmed by the Louisiana Fifth Circuit as proper under state law.  The Louisiana Supreme Court has held that La. Code Evid. art. 412.2, under which the evidence was admitted, was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children.  <u>State v. Williams</u>, 830 So.2d 984, 986-987 (La. 2002).  In <u>Williams</u>, the Louisiana Supreme Court likened Article 412.2 to Fed. R. Evid. 413.[32] <u>Id</u>.

Both the state and federal rules are subject to the balancing test concerning probative value and prejudicial effect.  <u>United States v. Dillon</u>, 532 F.3d 379, 387 (5th Cir. 2008) ("Evidence admissible under Rule 413 is still subject to the Rule 403

---

[32]Fed. R. Evid. 413(a) provides as follows: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." The terminology of Rule 413 was amended in 2011 for stylistic purposes only.  <u>See</u> Advisory Committee Notes, 2011 Amendments foll. Fed. R. Evid. 413(a).

balancing test, so it may be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice.'") (citing Fed. R. Evid. 403); State v. Hernandez, 93 So.3d 615, 629 (La. App. 5th Cir. 2012) (same with regard to La. Code Evid. art. 412.2). Like the Louisiana courts with Article 412.2, the federal courts have noted that "Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." United States v. Enjady, 134 F.2d 1427, 1431 (10th Cir. 1998); United States v. Guidry, 456 F.3d 493, 502-03 (5th Cir. 2006) ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence.") (citing Enjady, 134 F.2d at 1431).

In this case, the probative value of providing information about the other incidents of sexual acts with another child, L.C., far outweighed any potential prejudice. As determined by the state trial court before trial, the evidence was relevant to detail the chronology and similarity of Harris's incidents of predation of sleeping children in the neighborhood as proof of his lustful disposition. The testimony made clear the distinction in the incident involving L.C. The jury also heard testimony that L.C. did not identify Harris at her trial, and there was evidence that Harris was acquitted of the

charges related to L.C.[33]  Harris's encounter with L.C. was also relevant to the timing of events concerning M.B.'s delayed reporting of the multiple incidents against him. Significantly, the state trial court gave limiting instructions to the jury before L.C. testified, before M.B. testified, and at the close of trial regarding the restricted use of this "other crimes" evidence.[34]  There is no indication in the record that the other crimes testimony and evidence misled the jury into an improper verdict.  The fact that the jury returned a verdict of guilty of the lesser offense of forcible rape evinces a concerted and conscientious effort on its part to consider the evidence of the charged crime of which there was substantial evidence.  Harris has not demonstrated in the instant case that the other crimes evidence from L.C. was inadmissable or rendered his trial fundamentally unfair.  Because he has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" or denial of a fundamentally fair trial. Robinson, 2 F.3d at 567; Neal v. Cain, 141 F.3d at 214.  Even if he had shown an error, the evidence was not so prejudicial as to violate due process standards.

Harris also suggests that the state trial court erred in failing to instruct the jury on the meaning of acquittal in connection with L.C.'s testimony.  Before L.C.'s testimony, Harris's counsel requested a charge on the meaning of acquittal, which was considered by the state trial court but not included in the jury instructions.  The Louisiana Fifth

---

[33]St. Rec. Vol. 8 of 12, Trial Transcript (continued), pp. 48-49, 81-82, 84-85, 12/17/09.

[34]Id. at pp. 31-33, 92-93, 250-51.

Circuit held that the failure to read a special jury charge constitutes reversible error only when it causes prejudice to the constitutional or statutory rights of the accused, citing State v. Davis, 768 So.2d 201, 211 (La. App. 5th Cir. 2000), writ denied, 795 So.2d 1205 (La. 2001). The court found no prejudice resulting from the state trial court's decision not to read the requested charge because L.C. herself testified that Harris was found not guilty and defense counsel addressed the acquittal in his closing arguments. The court noted that Louisiana law did not require a special instruction when the matter is presented to the jury in closing arguments per Davis.

This court's task on habeas review is to determine whether the underlying proceeding was rendered fundamentally unfair by a violation of due process standards. Lisenba, 314 U.S. at 236-37; Neyland, 785 F.2d at 1293; Peters, 942 F.2d at 940. The court does not concern itself with whether a jury instruction or its absence violated state law. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Instead, error in a jury instruction is not grounds for habeas relief unless the error rendered the underlying proceeding fundamentally unfair under due process considerations. Id. at 67-68. The burden of proof is on the petitioner to prove that an error resulting in a constitutional violation occurred. Cupp v. Naughten, 414 U.S. 141, 146 (1973). In this case, Harris fails to present a constitutional issue.

The Louisiana appellate courts held that the state trial court did not err in failing to give Harris's requested charge. Without some error, there is nothing for this court to

review.  Nevertheless, even if failure to give the requested charge could be considered error, Harris has not demonstrated any prejudice in violation of his due process rights. As noted by the state courts, the jury heard testimony and argument that Harris was acquitted or found not guilty of raping L.C.  Nothing in the record suggests that the jury was confused about the meaning of acquittal or misunderstood the significance of the acquittal, especially in light of the reduced verdict the jury returned.  Because Harris has not established prejudice or a violation of his due process rights, he can not establish that the state courts' denial of relief on these claims was contrary to or an unreasonable application of federal law.  He is not entitled to relief on these claims.

C.    REVIEW OF POST-CONVICTION APPLICATION (CLAIM NO. 3)

Harris asserts that the state trial court erred by denying his application for post-conviction relief because he was not in possession of the trial record when he filed it.  He contends that this was why he was unable to meet his burden of proof.  Harris asserted this claim in the Louisiana Fifth Circuit and the Louisiana Supreme Court, but neither court expressly addressed the issue when denying Harris's writ applications.

Harris has failed to establish his entitlement to federal habeas corpus review or relief on this issue.  It is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed

in federal habeas cases.  Id. at 320; Drevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).  This claim is not cognizable on federal habeas review, and Harris is not entitled to relief.

D.    FALSE TESTIMONY (CLAIM NO. 7(B))

Harris alleges that the State relied on false testimony from L.C. to obtain his conviction.  When Harris asserted this specific claim on post-conviction review, the state courts declined to address it because it was encompassed in the resolution of his related claims on direct appeal, citing La. Code Crim. P. art. 930.4(A).  On direct appeal, the Louisiana Fifth Circuit concluded that L.C.'s testimony was clear and consistent with L.C.'s prior statements and testimony.

A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False testimony is "material" only if there

35

is any reasonable likelihood that it could have affected the jury's verdict. <u>Duncan</u>, 70 F. App'x at 744 (citing <u>Nobles</u>, 127 F.3d at 415).

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact. <u>Brazley v. Cain</u>, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing <u>United States v. Emueqbunam</u>, 268 F.3d 377, 403-04 (6th Cir. 2001); <u>Jones v. Gibson</u>, 206 F.3d 946, 958 (10th Cir. 2000); <u>United States v. Noriega</u>, 117 F.3d 1206, 1218 (11th Cir. 1997), <u>United States v. Spillone</u>, 879 F.2d 514, 520 (9th Cir. 1989)); <u>Thompson</u>, 161 F.3d at 808.  This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

In this case, Harris does not specify what testimony by L.C. was false.  The state courts concluded that her statements were clear and consistent, including her concession that she had not been able to identify Harris at her trial because she was uncomfortable. The testimony established that L.C. had identified Harris at the time she was raped, and she identified Harris at M.B.'s trial.[35]  The state courts also confirmed that her testimony regarding the details of the rape were consistent with her pretrial statements and trial testimony from the earlier trial.  L.C. also acknowledged before the jury that Harris was found not guilty at her trial.[36]

---

[35]St. Rec. Vol. 8 of 12, Trial Transcript (continued), pp. 47-48, 49, 88-89, 12/17/09.

[36]<u>Id</u>. at pp. 82, 84-85.

To the extent Harris attempts to argue that L.C. was lying about the rape simply because he was acquitted, his claim is unavailing.  The Supreme Court has repeatedly explained that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt."  United States v. Watts, 519 U.S. 148, 155 (1997) (citation omitted).  The Supreme Court has recognized that "an acquittal is not a finding of any fact.  An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt."  Id. at 155 (citation omitted).  The most important factor at L.C.'s trial was her failure to identify him during her trial as the rapist.  That fact was disclosed to the jury at M.B.'s trial, where L.C. by then was comfortable enough to identify Harris in person.[37]

Based on this record and as found by the state courts, Harris has not established that L.C. presented false testimony or that the State suborned perjury through her testimony.  The denial of relief on this issue was not contrary to or an unreasonable application of federal law.  Harris is not entitled to relief on this claim.

E.     SUFFICIENT EVIDENCE OF DATE OF CRIME (CLAIM NO. 11)

Harris broadly argues that the evidence was insufficient to prove his guilt because M.B. testified that the rape incidents occurred around April 1, 2004, but Harris was then

---

[37]Id. at pp. 85, 88-89.

in jail and could not have committed the rapes.  Harris asserted this claim pro se on direct appeal, and the Louisiana Fifth Circuit found it meritless.  The court held that the jury had sufficient evidence to resolve any credibility issue or conflicting testimony in favor of M.B.'s testimony that the incidents took place in the Spring of 2004 at a time when Harris was not in jail and in close proximity to his arrest for the rape of L.C.  This was the last reasoned opinion on the issue.

Under Jackson v. Virginia, 443 U.S. 307 (1979), a federal habeas court addressing a sufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[38] Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive

---

[38]Louisiana law allows proof of a crime by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson.  Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So.2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So.2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So.2d at 208. The appropriate standard for this court remains Jackson.

elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16).

The court's consideration of the sufficiency of the evidence extends only to what was presented to the factfinder at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).  Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational

decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Harris was convicted in 2009 of forcible rape of M.B. At the time, rape was defined by La. Rev. Stat. § 14:41(A) as "the act of . . . oral sexual intercourse with a male . . . person committed without the person's lawful consent." State v. Falgout, 198 So.3d 1232, 1240 (La. App. 4th Cir. 2016). Oral sexual intercourse is defined in part as "the intentional engaging in . . . [t]he touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim." La. Rev. Stat. § 14:41(C)(2); Falgout, 198 So.3d at 1240. A forcible rape under La. Rev. Stat. § 14:42.1 in relevant part is a "rape committed when the . . . oral . . . sexual intercourse is deemed to be without the lawful consent of the victim because it is committed . . . [w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." Falgout, 198 So.3d at 1240-41. In addition, Louisiana law is settled that the testimony of the victim alone, even without corroborating evidence, is sufficient to prove a sex offense. State v. Blackwell, 746 So.2d 205, 212 (La. App. 2d Cir. 1999); State v. Hampton, 716

So.2d 417, 418 (La. App. 1st Cir. 1998); <u>State v. Francis</u>, No. 2010-0790, 2010 WL 4278278, at *3 (La. App. 1st Cir. Oct. 29, 2010) (citing <u>Hampton</u>, 716 So.2d at 418-421).

Thus, to convict Harris of forcible rape, the State had the burden of proving that Harris committed (1) an act of oral sexual intercourse; (2) without the lawful consent of M.B.; and (3) M.B. was prevented from resisting the act by force or threats of physical violence under circumstances in which he reasonably believed that such resistance would not prevent the rape. <u>See</u> <u>State v. Fruge</u>, 34 So.3d 422, 425 (La. App. 3d Cir. 2010) (citing <u>State v. Schexnaider</u>, 852 So.2d 450, 457 (La. App. 3d Cir. 2003)). Harris does not actually challenge the sufficiency of the evidence to prove the physical elements of the forcible rape, nor does he deny that he orally raped M.B. Instead, his sole argument is that he was in jail on the date(s) when M.B. testified the rapes happened.

M.B. testified that on two occasions, Harris forced him to perform fellatio under threat that Harris would hurt M.B.'s father and that Harris offered him money for a PlayStation 2.[39] M.B. recalled that these events happened in April of 2004, and that he eventually told his father what Harris made him do after his father asked if Harris had ever touched him inappropriately.[40] After telling his father, he overheard that Harris had done something to someone else.[41] On cross-examination, M.B. recalled that the two

---

[39]St. Rec. Vol. 8 of 12, Trial Transcript (continued), pp. 99-101, 12/17/09.

[40]<u>Id</u>. at pp. 102-04.

[41]<u>Id</u>. at pp. 104, 116, 121.

sexual assaults occurred on April 1 and 2, 2004.[42]  He remembered this because April

Fool's Day was a favorite day for him when he was younger.  He did not remember

telling anyone that it happened the night before Harris was arrested for the other incident

with the girl across the street.[43]

Shortly after M.B. testified, defense counsel presented documentation and a

stipulation with the State that showed Terry D. Harris, born February 3, 1982, was

incarcerated in the Orleans Parish Prison from March 31, 2004 through April 3, 2004.[44]

The State reminded the jury during closing arguments that M.B. told the interviewer at

the Children's Advocacy Center ("CAC") during his videotaped statement on May 26,

2004, that these assaults occurred after Easter, which was on April 11, 2004.[45]  The State

urged the jury to consider M.B.'s earlier recollection of Easter rather than April Fool's

Day as the marker for the events and that Easter was after Harris had been released from

his incarceration.  The jury apparently did so when finding that Harris had in fact forcibly

raped M.B.  This factual determination was within the jury's discretion, supported by the

record and not for this court to reassess.  For these reasons, Harris has not established

---

[42]Id. at p. 111.

[43]Id. at pp. 111, 113.

[44]Id. at pp. 144-45.

[45]Id. at pp. 185-86, 213-15.

that the denial of relief on this issue was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

F.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NO. 6, 9(A), 10 & 12)

Harris asserts several grounds on which he claims his trial and appellate counsel provided ineffective assistance of counsel.  Harris asserted three of his claims on post-conviction review in the state courts and two of his claims, that trial counsel failed to call witnesses and appellate counsel failed to raise actual innocence and false testimony issues on appeal, in this federal petition for the first time.  The Louisiana Supreme Court provided the last reasoned opinion finding that Harris failed to establish a basis for relief under  Strickland v. Washington, 466 U.S. 668 (1984), and adopted the supporting written reasons of the state trial court.

The standard for judging performance of counsel, relied on by the state courts, was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

43

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, 562 U.S. 86, 112 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir. 2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing

Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, under the AEDPA, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. As for the Harris's Claim No. 12 which was not presented to the state courts, I will consider it de novo under Strickland.[46]

## 1.    OBJECT TO PICTURES IN JURY DELIBERATIONS (CLAIM NO. 6(a))

Harris asserts that his trial counsel was ineffective when he failed to object to certain pictures, including those related to L.C., being taken into the jury room during deliberations. Construed broadly, Harris's contention is that the evidence related to L.C. was not admissible and was unduly prejudicial to the defense.

As discussed above, Harris has not established any error under state law or due process considerations in the admission of the evidence, including crime scene

---

[46]The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). Harris did not assert his Claim No. 12 in the state courts. With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009). Even under this standard, Harris's claim does not warrant federal habeas corpus relief for the reasons addressed below.

photographs related to L.C. Furthermore, under La. Code Crim. P. art. 793(A), a jury may request to see photographs received in evidence when the jury needs to exam them to arrive at a verdict. See State v. Thibodeaux, 216 So.3d 73, 86 (La. App. 3d Cir. 2017) (citing State v. Davis, 637 So.2d 1012, 1025 (La. 1994)). The record reflects that the jury was provided with photographs in evidence from the trial.[47] Therefore, Louisiana law authorized sending the pictures to the jury upon its request. Harris has provided no legal reason for his counsel to have objected to the photographs being sent to the jury. Counsel is not ineffective for failing to assert a meritless objection. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law. Harris is not entitled to relief on this claim.

2. OBJECT TO THE MODIFIED ALLEN CHARGE (CLAIM NO. 9(A))

Harris argues that he was denied effective assistance of counsel when trial counsel failed to object to the "modified Allen charge" when the state trial court told the jury

---

[47]St. Rec. Vol. 8 of 12, Trial Transcript (continued), p. 279, 12/17/09.

47

during deliberations that the verdict had to be by a 10 to 2 vote.  During deliberations, the jury sent the state trial court a note signed by the foreman asking, "What happens if we can only agree on a nine to three vote?"[48]  After conferring with counsel, the court returned a note stating, "Ten of Twelve jurors must concur to reach a verdict in this case."[49]  On post-conviction review, the state courts concluded that this was not a modified Allen charge and instead was a proper response imparting the basic rule that the jury must reach a 10 to 2 verdict.

In Allen v. United States, 164 U.S. 492 (1896), the United States Supreme Court approved a charge designed to break a jury deadlock and accomplish jury unanimity. The Louisiana Supreme Court, however, has banned the use of Allen charges and even modified Allen charges to avoid coercion of the jury.  State v. Schamburge, 344 So.2d 997 (La. 1977) (citing State v. Nicholson, 315 So.2d 639 (1975)); State v. Wilson, 806 So.2d 854, 858 (La. App. 3d Cir. 2001).  Two characteristics of an Allen charge found disturbing by the Louisiana courts are the admonition to the jurors in the minority to reconsider their opinion in favor of the majority vote in order to reach a decision and the implication by the trial judge to the jury that it must reach a decision because mistrial will not be accepted.  Wilson, 806 So.2d at 858-59.  However, the Louisiana Supreme

---

[48]St. Rec. Vol. 9 of 12, Trial Transcript (continued), p. 305, 12/17/09.  I do not see in the transcript that the jury submitted a question related to an 8 to 4 vote as posed by Harris and referenced by the state courts.

[49]Id. at 307.

Court has held that there is no prohibited <u>Allen</u> charge or error when a trial judge simply reminds the jury that 10 of the 12 jurors must agree on a verdict, especially when the jury has not declared a deadlock and the trial court makes no coercive remarks. <u>Schamburge</u>, 344 So.2d at 1001.

In Harris's case, the jury did not advise the state trial court that it was deadlocked. The trial court also did not use any of the language found suspect by the Louisiana Supreme Court. The court's response therefore was not an <u>Allen</u> charge or modified <u>Allen</u> charge prohibited under Louisiana law. <u>See</u>, <u>e.g.</u>, <u>State v. M.L. Jr.</u>, 35 So.3d 1183, 1194-95 (La. App. 3d Cir. 2010); <u>State v. Sumrall</u>, 34 So.3d 977, 991 (La. App. 3d Cir. 2010). Thus, Harris has not established that the state trial court gave an impermissible instruction to the jury when it reiterated that the law required a 10 to 2 vote. Counsel had no legal basis to object and was not ineffective for failing to do so. <u>Johnson</u>, 306 F.3d at 255; <u>Smith</u>, 907 F.2d at 585 n.6; <u>Koch</u>, 907 F.2d at 527. The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law. Harris is not entitled to relief on this claim.

3.    <u>CONFLICT WITH COUNSEL (CLAIM NO. 10)</u>

Harris asserts that he was denied effective assistance of counsel based on a conflict with counsel. On post-conviction review, the state courts denied relief noting that Harris had failed to identify any particular conflict between himself and counsel. Even now, Harris does not allege any more than that an "actual" conflict existed and suggests that

he needs to peruse the transcript to support that contention.[50]  He provides no details or explanation describing the basis of any conflict.

The trial transcript and record reveal no problems or conflicts reported between Harris and his trial counsel.  As noted by the state courts, Harris is required to present more than unsupported conclusory assertions to establish ineffective assistance of counsel, and he has not done so here.  Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland and its progeny.  Harris is not entitled to relief on this claim.

4.    FAILURE TO CALL WITNESSES (CLAIM NO. 12(A))

Harris alleges for the first time in this court that his trial counsel was ineffective when he failed to call witnesses to prove that Harris was in jail when the crime was committed.  However, Harris's counsel and the prosecutors entered into a stipulation that the Orleans Parish Prison records indicated that Terry D. Harris, born February 3, 1982, was incarcerated in that facility from March 31, 2004 through April 3, 2004.[51]  In light of the stipulation, Harris's counsel did not need to call witnesses to establish this as fact

---

[50]Rec. Doc. No. 15, p. 1.

[51]St. Rec. Vol. 8 of 12, Trial Transcript (continued), pp. 144-45, 12/17/09.

before the jury.  The state trial court also instructed the jury about the meaning of the stipulation and the fact that no further proof was required.[52]

Harris's counsel therefore placed the fact of his incarceration into evidence before the jury, which apparently is what Harris's contends should have happened.  Harris has not established that the outcome of his trial would have been different had counsel called witnesses instead of entering the stipulation with the State.  He therefore has not established either prong of the <u>Strickland</u> test or that his trial counsel was ineffective in any way.  He is not entitled to relief on this claim.

5.    FAILURE TO RAISE ISSUES ON APPEAL (CLAIMS NO. 6(B) AND 12(B))

Harris claims that his appointed appellate counsel failed to assert on appeal that he was actually innocent, <u>i.e.</u> that he was in jail when M.B. said the rapes occurred; that the State relied on false testimony; and that it was error for the pictures to be provided to the jury during deliberations.  Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The <u>Strickland</u> standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1997).  To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a

---

[52]<u>Id</u>. at p. 248.

reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every non-frivolous available ground for appeal.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every non-frivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit.  As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found

constitutionally ineffective for failure to raise every conceivable issue. Smith, 528 U.S. at 288; Jones, 463 U.S. at 754.

Harris focuses on three claims that he contends should have been asserted on direct appeal by his counsel. However, Harris has not shown that any of the claims were non-frivolous or would have been likely to succeed. Harris contends that counsel should have argued his actual innocence based because he was in jail when M.B. said the rapes occurred. As addressed above, the State presented evidence to show that M.B., a child, likely was confused about the actual dates of the rapes. M.B. testified at trial that he recalled the rapes first occurred around April Fool's Day or April 1, 2004. The evidence also demonstrated that M.B. first reported to the interviewer that the rapes occurred after Easter, which was April 11, 2004. The jury had the sole discretion to reconcile the evidence, including the dates of the rapes to the extent necessary to prove that Harris was there to commit the rapes. In light of the overall evidence, there was no reason for appellate counsel to pursue this claim. The unlikely success of the claim had it been raised by counsel is illustrated by the Louisiana Fifth Circuit's denial of the same claim when it was asserted pro se by Harris himself on direct appeal. Harris has not met his burden under Strickland on this claim.

Similarly, as to Harris's claim that appellate counsel should have asserted the issue that the State relied on false testimony from L.C., he has not demonstrated that the State relied on or that L.C. gave false testimony during trial. The Louisiana Fifth Circuit

addressed the propriety of L.C.'s testimony on direct appeal and found that it was not speculative or unclear and that it was instead relevant to resolution of the case. Harris has not established that any non-frivolous argument existed for his appellate counsel to have asserted. He has not met his burden under Strickland on this claim.

Finally, Harris claims that appellate counsel should have asserted that it was error for the pictures to be provided to the jury during deliberations. As discussed above, it was not error under Louisiana law for the state trial court to have allowed the jury to view pictures that were in evidence during deliberations under La. Code Crim. P. art. 793(A), and there was no basis for trial counsel to have objected. Thus, there was no non-frivolous claim for appellate counsel to have asserted, and it would not have been successful for the reasons assigned by the state courts when Harris's ineffective assistance of trial counsel claim was denied on post-conviction review. The denial of relief by the state courts on this point was not contrary to or an unreasonable application of Supreme Court law.

In conclusion, Harris has failed to prove either prong of the Strickland test or establish that his appellate counsel was ineffective in any way. Thus, he has not shown the state court's denial of relief when considered was contrary to or an unreasonable application of Strickland. He is not entitled to relief on these claims.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Harris's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[53]

New Orleans, Louisiana, this _____19th_____ day of July, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[53]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.